**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

PBM PRODUCTS, LLC; PBM
NUTRITIONALS, LLC,

       *Plaintiffs-Appellees,*

v.

MEAD JOHNSON & COMPANY,

       *Defendant-Appellant,*

and

PAUL MANNING; MEAD JOHNSON
NUTRITION COMPANY,

       *Defendants.*

No. 10-1421

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, Chief District Judge.
(3:09-cv-00269-JRS)

Argued: January 27, 2011

Decided: April 20, 2011

Before NIEMEYER, DAVIS, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Davis wrote the opinion, in which Judge Niemeyer and Judge Keenan joined.

**COUNSEL**

**ARGUED:** Stephen Blake Kinnaird, PAUL HASTINGS JANOFSKY & WALKER, LLP, Washington, D.C., for Appellant. Harold Paul Weinberger, KRAMER, LEVIN, NAFTALIS & FRANKEL, LLP, New York, New York, for Appellees. **ON BRIEF:** Behnam Dayanim, Candice S. McPhillips, PAUL HASTINGS JANOFSKY & WALKER, LLP, Washington, D.C., for Appellant. Jonathan M. Wagner, Tobias B. Jacoby, KRAMER, LEVIN, NAFTALIS & FRAN-KEL, LLP, New York, New York; Robert Redmond, Jr., WILLIAMS MULLEN, Richmond, Virginia, for Appellees.

**OPINION**

DAVIS, Circuit Judge:

Appellee PBM Products, LLC (PBM) filed this action pursuant to the Lanham Act, 15 U.S.C. §1125(a), against Appellant Mead Johnson & Company, LLC (Mead Johnson) alleging that Mead Johnson distributed more than 1.5 million direct-to-consumer mailers that falsely claimed PBM's baby formula products were inferior to Mead Johnson's baby formula products. After a jury found that Mead Johnson had engaged in false advertising, the district court issued an injunction prohibiting Mead Johnson from making similar claims. On appeal, Mead Johnson presents three clusters of issues: (1) whether the district court erred in its dismissal of Mead Johnson's counterclaims; (2) whether the district court abused its discretion in its admission of expert opinion testimony and evidence of prior litigation between the parties; and (3) whether the district court erred or abused its discretion in issuing the injunction. We have fully considered all of the issues presented, and we reject Appellant's contentions. Accordingly, we affirm.

I.

A.

PBM produces store-brand, "generic," infant formula. Mead Johnson produces baby formula products under the brand name Enfamil, including a standard formula, a formula with broken-down proteins, and a formula with added rice starch. Both companies use the same supplier for two key nutrients — docosahexaenoic acid (DHA) and arachidonic acid (ARA) — which are important to an infant's brain and eye development. Mead Johnson calls these nutrients by their brand name "Lipil," while PBM uses their generic label "lipids." Both companies use the same level of the lipids. As a result, PBM includes a comparative advertising label on their formula that states, "Compare to Enfamil."

The parties are familiar combatants on the Lanham Act battlefield. For example, in 2001, Mead Johnson distributed brochures and tear-off notepads to patients in pediatricians' offices stating that store-brand formula did not have sufficient calcium or folic acid. PBM sued and obtained a restraining order prohibiting Mead Johnson from making similar statements. *PBM Products, Inc. v. Mead Johnson & Co.*, 2001 WL 841047 (E.D. Va. April 4, 2001). The parties settled that dispute. *See PBM Products, LLC v. Mead Johnson & Co.*, 678 F. Supp. 2d 390, 396 (E.D. Va. 2009). Then, in 2002, Mead Johnson distributed a chart to physicians stating that store-brand formula did not contain beneficial nucleotides. PBM sued and, again, the parties settled. *Id.* at 396-97.

The instant engagement began in 2008, when Mead Johnson distributed a mailer directly to consumers as part of a new advertising campaign. The mailer focused on Mead Johnson's Enfamil LIPIL infant formula and expressly compared it to store brands. The mailer was distributed to 1.6 million consumers across the country between June 2008 and April 2009. The target audience consisted of parents of two- to three-

month old infants. The mailer cited studies that compared Mead Johnson's current formula with an older version of the same formula and concluded that the addition of the lipids resulted in improved eye and brain development. Specifically, the mailer contained the following statements:

- "It may be tempting to try a less expensive store brand, but only Enfamil LIPIL is clinically proven to improve brain and eye development."

- ". . . before you try a store brand of formula, remember that a full year of Enfamil LIPIL goes a long way to nourishing the dreams you have for your little one."

- "All infant formulas are not the same . . . Enfamil LIPIL formulas offer expert recommended levels of DHA and ARA."

- "Enfamil LIPIL's unique formulation is not available in any store brand."

- "There are plenty of other ways to save on baby expenses without cutting back on nutrition."

- "Store brands may cost less, but Enfamil gives your baby more. When it comes to nutrition and development, you want a product you can rely on."

In addition, the mailer displayed a checklist stating that Enfamil LIPIL is "[p]roven to result in IQ scores similar to breastfed babies" and "[p]roven to enhance visual development," while indicating that the "Store Brand" does not. Finally, the mailer provided a graphic of a duck showing a comparison of visual sharpness where one half of the graphic, captioned "with LIPIL," was clear and the other half of the graphic, captioned "without LIPIL," was blurry.

### B.

In April 2009, PBM sued Mead Johnson alleging false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), and commercial disparagement. The district court denied PBM's request for a temporary restraining order. *PBM Products v. Mead Johnson*, 2009 WL 1684471 (E.D. Va. May 7, 2009). Mead Johnson filed counterclaims against PBM alleging breach of contract, defamation, false advertising, and civil contempt. Mead Johnson's defamation counterclaim was based primarily on a press release issued by PBM CEO Paul Manning declaring that "Mead Johnson Lies About Baby Formula . . . Again." Mead Johnson's false advertising counterclaim alleged that labels on PBM's products conveyed several implied messages comparing PBM and Mead Johnson's formulas. Mead Johnson's breach of contract and civil contempt counterclaims related to the prior litigation between the parties.

Prior to trial, the district court granted PBM summary judgment on Mead Johnson's defamation counterclaim. *PBM Products v. Mead Johnson*, 678 F. Supp. 2d 390, 401-02 (E.D. Va. 2009). The district court reasoned that false advertising is substantially synonymous with lying. As such, the district court found the statement in the press release to be substantially true and therefore a bar to the defamation counterclaim. *Id.*

The district court also denied Mead Johnson's motion for summary judgment on PBM's claims. *PBM Products v. Mead Johnson*, 2009 WL 5090862 at *4 (E.D. Va. Dec. 24, 2009). The court reasoned that laches did not apply because the 2008 mailer was significantly different from Mead Johnson's prior advertising. The court reasoned that because the 2008 mailer "made stronger and more direct arguments related to the efficacy of store bought infant formula than prior ads" and "had a new tone and point that was absent from prior campaigns,"

it was sufficiently different so that laches did not apply. *Id.* at *3-4.

Also prior to trial, the district court denied Mead Johnson's motion to exclude the testimony of two PBM experts, Joseph Ridgway and Douglas Schoen. *PBM Products v. Mead Johnson*, 2010 WL 56072 (E.D. Va. Jan. 4, 2010). Ridgway conducted a survey showing consumers received two implied but false messages from the mailer. Similarly, Schoen conducted a survey showing that the mailer would dissuade consumers from purchasing store brand formula. For both surveys, Mead Johnson argued that the methods used were unreliable and that the surveys failed to sample the proper group because they included parents of infants older than the targeted two-to three-month olds. The district court rejected both arguments and concluded that "while the survey sample may not exactly match the audience that received the disputed advertisement, it is a sufficiently close approximation of the recipient pool." *Id.* at *11.

During discovery, PBM limited its case to the literal and implied false claims communicated by the mailer. Specifically, the claims in question by the time of trial were two express statements contained in the mailer and two implied statements. The two express statements were: (1) "mothers who buy store brand infant formula to save baby expenses are cutting back on nutrition compared to [Mead Johnson's] Enfamil" and (2) "only Enfamil has been clinically proven to improve infants' mental and visual development." The two messages implied by the mailer were: (1) Enfamil contains two important fatty acids, DHA and ARA, and PBM's store brand formulas do not; and (2) Enfamil has been clinically tested and shown to be superior to PBM's formula with respect to brain and eye development in infants.

At trial, the district court permitted PBM to introduce evidence concerning the parties' prior litigation. Specifically, the court admitted testimony about the prior false and misleading

advertisements and the fact the parties settled the prior litigation. However, the court excluded evidence regarding the settlement amounts.

At the close of Mead Johnson's case on its Lanham Act counterclaims, the district court granted PBM's motion for judgment as a matter of law and dismissed the claims based on statute of limitations, laches, and deficiencies in the merits. *PBM Products v. Mead Johnson*, 2010 WL 723750 (E.D. Va. March 2, 2010). The district court concluded that the statute of limitations barred Mead Johnson's false advertising claim concerning PBM's routine and gentle formula for all ads prior to May 18, 2007. *PBM Products v. Mead Johnson*, 2010 WL 723750, at *2. For allegations concerning ads for routine and gentle formula products issued after May 18, 2007, the court concluded that laches barred Mead Johnson's false advertising counterclaim. *Id.* at *3. As to Mead Johnson's false advertising claim regarding PBM's rice starch formula, the district court concluded Mead Johnson failed to prove falsity or loss causation. *Id.* at *2-5.

On November 10, 2009, the jury returned a general verdict on PBM's claim, finding that Mead Johnson "engaged in false advertising in violation of the Lanham Act" and awarded PBM $13.5 million in damages. On December 1, 2009, the district court issued an injunction without making any of the findings required by *eBay v. MercExchange*, 547 U.S. 388 (2006). After a challenge by Mead Johnson, the district court stayed the injunction to permit full briefing. After briefing and a hearing, the district court issued a new injunction, which enjoined all four advertising claims, including the express claim that "only Enfamil LIPIL is clinically proven to improve brain and eye development." The district court concluded that the injunction applies to "all advertising or promotional material or statements going forward." *PBM Products v. Mead Johnson*, 2010 WL 957756, at *5 (E.D. Va. March 12, 2010). Mead Johnson timely appealed. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We first address Mead Johnson's contention that the district court erred in rejecting its defamation counterclaim and its Lanham Act counterclaims as a matter of law.

### A.

Mead Johnson argues that the district court erred in granting summary judgment in favor of PBM on Mead Johnson's defamation claim. We review *de novo* whether the district court erred in granting summary judgment, viewing the facts and drawing all reasonable inferences therefrom in the light most favorable to Mead Johnson. *Georgia Pacific Consumer Products v. Von Drehle Corp.*, 618 F.3d 441, 445 (4th Cir. 2010). Summary judgment is proper only if there is no genuine issue of material fact and PBM is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Under Virginia Law, a defamation plaintiff "first must show that a defendant has published a false factual statement that concerns and harms the plaintiff or the plaintiff's reputation." *Hyland v. Raytheon Tech. Servs.*, 670 S.E.2d 746, 750 (Va. 2009); *Chaves v. Johnson*, 335 S.E.2d 97, 101-02 (Va. 1985).

The district court found the statement "Mead Johnson Lies About Baby Formula . . . Again" was substantially true because "false advertising is substantially synonymous with lying." J.A. 1930-31. Mead Johnson claims that the ordinary meaning of a "lie" implies a deliberate intent to deceive or an "intentional untruth." Appellant Br. at 56 (citing Random House Webster's Unabridged Dictionary). Mead Johnson asserts that it is possible to violate the Lanham Act absent any intentional falsehoods. Thus, Mead Johnson asserts that the

district court wrongly concluded that false advertising is substantially synonymous with lying. We disagree.

The meaning of the word "lie" includes to "tell an untruth" or to "speak or write falsely." Black's Law Dictionary, 1005 9th Ed. 2009. Mead Johnson did not dispute that it distributed false statements concerning PBM's formulas on prior occasions. Accordingly, the statement is substantially true. In addition, the statement, read in context, makes clear that the "lies" referred to prior false advertising. Consequently, summary judgment was warranted.

## B.

The district court also disposed of Mead Johnson's Lanham Act counterclaims as a matter of law; it granted PBM's motion for judgment at the close of all the evidence. We review *de novo* awards of judgment as a matter of law. *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). A judgment as a matter of law is proper "when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Singer v. Dungan*, 45 F.3d 823, 826 (4th Cir. 1995). A district court's laches determination is reviewed for an abuse of discretion. *Id.*

The Lanham Act prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C.A. § 1125(a)(1)(B). Thus, a plaintiff asserting a false advertising claim under the Lanham Act must establish that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product;

(2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Scotts Co. v. United Industries*, 315 F.3d 264, 272 (4th Cir. 2002) (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir.)); *accord IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002); *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).

For liability to arise under the false advertising provisions of the Lanham Act, "the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." *C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997). "Where the advertisement is literally false, a violation may be established without evidence of consumer deception." *Cashmere & Camel Hair Mfrs.*, 284 F.3d at 311. But if "a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged [advertisements] tend to mislead or confuse consumers." *Johnson & Johnson Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992); *see also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 14 (7th Cir. 1992) ("[A] court may find on its own that a statement is literally false, but, absent a literal falsehood, may find that a statement is impliedly misleading only if presented with evidence of actual consumer deception.").

"In analyzing whether an advertisement . . . is literally false, a court must determine, first, the unambiguous claims made by the advertisement . . . , and second, whether those claims are false." *Scotts*, 315 F.3d at 274 (quoting *Novartis Consumer Health v. Johnson & Johnson-Merck Consumer Pharmaceuticals*, 290 F.3d 578, 586 (3d Cir. 2002)). "A literally false message may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Id.*

Further, as courts have long held, it is proper to use the analogous state limitations period for Lanham Act suits because the Act provides no express statute of limitations. *See Reed v. United Transp. Union*, 488 U.S. 319, 323-24 (1989); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002). In Virginia, the analogous state limitations period is two years. Va. Code § 8.01-243(A); *Unlimited Screw Prods. v. Malm*, 781 F. Supp. 1121, 1125-26 (E.D. Va. 1991). As a result, the district court concluded that since Mead Johnson filed its counterclaim on May 18, 2009, Mead Johnson's counterclaims concerning PBM's routine and gentle formulas that accrued before May 18, 2007 are time-barred by limitations, and Mead Johnson's counterclaims concerning PBM's routine and gentle formulas that accrued thereafter were barred by laches. 2010 WL 723750, *2-3.

The district court's conclusion that the statute of limitations barred Mead Johnson's false advertising claim concerning PBM's routine and gentle formula for all ads issued prior to May 18, 2007 was proper. Mead Johnson filed its counterclaim on May 18, 2009. Therefore, claims that accrued before May 18, 2007 are time-barred by the two year statute of limitations. The district court found that PBM first made the "Compare to Enfamil" claim for its routine product no later

than 2003 and for its gentle product in 2006. As such, the statute of limitations barred Mead Johnson's counterclaim for advertisements published before May 18, 2007.

As for allegations concerning advertisements for products published after May 18, 2007, the district court's application of laches regarding PBM's routine and gentle products is neither "guided by erroneous legal principles" nor based "upon a clearly erroneous factual finding." *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009).

Estoppel by laches generally applies to preclude relief for a plaintiff who has unreasonably "slept" on his rights. *See Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990). In other words, laches bars false advertising claims where a defendant is prejudiced by a plaintiff's unreasonable delay in bringing suit after the plaintiff knew of the defendant's violation. *What-A-Burger of Virginia v. Whataburger of Corpus Christi, Texas*, 357 F.3d 441, 449 (4th Cir. 2004) ("Because the Lanham Act does not include a limitations period, courts use the doctrine of laches to address the inequities created by a trademark owner who, despite having a colorable infringement claim, allows a competitor to develop its products around the mark and expand its business, only then to lower the litigation boom."). *See also* 5 McCarthy at § 31:12 ("Laches is a good defense if plaintiff's long failure to exercise its legal rights has caused defendant to rely to its detriment by building up a valuable business around its trademark."). When a false advertising plaintiff files suit outside of the statute of limitations, both elements of laches—unreasonable delay and prejudice—are strongly presumed. *See EEOC v. The Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir. 1984) (finding that once the statute of limitations has expired, the defendant "enjoys the benefit of a presumption of inexcusable delay and prejudice").

Here, Mead Johnson's delay was unreasonable because Mead Johnson knew about the "compare to" claim since at

least 2006 when the parties were involved in trademark litigation over a label that contained the exact same claim. As the district court noted, the unreasonable delay prejudiced PBM because of PBM's continued use of the advertisement on all of its formulas in over a dozen retail stores for years. "Indeed, by alleging that PBM has been unjustly enriched by over $27 million as a result of the 'compare to' ads, [Mead Johnson] must concede that permitting this suit to go forward would enable it to benefit from its own unreasonable delay." 2010 WL 723750, at *3. *See Jarrow Formulas v. Nutrition Now*, 304 F.3d 829, 837 (9th Cir. 2002) ("We hold that the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period. To hold otherwise would effectively swallow the rule of laches, and render it a spineless defense.").

Finally, the district court did not err in granting judgment as a matter of law on Mead Johnson's Lanham Act counterclaim concerning PBM's rice starch formula advertisements. Mead Johnson claimed that the "compare to" ad impliedly communicated the false message that the performance of PBM's products have been tested and verified as equivalent to Mead Johnson's counterpart formula. To support its claim, Mead Johnson offered the testimony of Dr. Ravi Dhar, who conducted two consumer surveys. However, Dhar assumed that respondents who stated "same" meant "identical," even though he admitted that some respondents who thought the products were nearly the same would have chosen "same" instead of "different." 2010 WL 723750, at *4. As the district court concluded, "[t]estimony at trial showed that the ingredients of the parties' products are very similar, but not identical, and that it is likely that the nutritional value of the parties' products is nearly the same." *Id.* Because the surveys failed to account for the actual allegations in the case, they failed to provide the required evidence of falsity.

Similarly, the district court concluded that Mead Johnson failed to show that other alleged false statements were actu-

ally false. As to the allegations that the "compare to" language impliedly communicated that the products had been tested against each other, PBM's marketing director testified that the products have, in fact, been tested against each other. *Id.* at *5. In addition, Mead Johnson alleged that PBM's label stated its gentle formula contains "partially broken down whey protein" but presented no evidence to suggest otherwise. As a result, the alleged implied message could not be proven false.

In any event, even if PBM's "compare to" messages were false, the district court correctly concluded that Mead Johnson cannot prove that the "compare to" language caused any damages. *See Xoom v. Imageline*, 323 F.3d 279, 286 (4th Cir. 2003) (holding that in order to recover damages under the Lanham Act, plaintiff must prove that there was a violation, that plaintiff has been damaged, and that there is a causal connection between the violation and those damages). The fatal flaw in Mead Johnson's economic information was that its expert assumed that every sale PBM made was attributable to the "compare to" statement on the product. As a result, Mead Johnson failed to show that it suffered damages that were caused by the statement.

## III.

We now turn to Mead Johnson's contention that the district court erred by admitting (1) expert survey evidence and (2) evidence of prior Lanham Act litigation between the parties. The exclusion or admission of evidence is reviewed for abuse of discretion. *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 310 (4th Cir. 2006); *see also Old Chief v. United States*, 519 U.S. 172, 174 n.1 (1997). A court "has abused its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009).

## A.

Pursuant to Federal Rule of Evidence Rule 702, expert testimony is admissible if it will assist the trier of fact and is (1)

"based upon sufficient facts or data," (2) "the product of reliable principles and methods," and (3) "the principles and methods [have been applied] reliably to the facts of the case." Fed. R. Evid. 702. As the Supreme Court has explained, evidence is admissible under Rule 702 if "it rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 597 (1993). Because "expert witnesses have the potential to 'be both powerful and quite misleading," the court must "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) and *Daubert*, 509 U.S. at 588, 595); *see also Richmond Med. Ctr. for Women v. Herring*, 527 F.3d 128, 134 n.1 (4th Cir. 2008) ("Under Federal Rule of Evidence Rule 702 expert testimony must be both relevant and reliable.").

A Lanham Act plaintiff "asserting an implied falsehood claim must establish that the advertising tends to deceive or mislead a substantial portion of the intended audience." *Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 280 (4th Cir. 2002). That fact is typically shown by the use of consumer surveys. "While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare." *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 618 (7th Cir. 1993). Usually, objections based on flaws in the survey's methodology are properly addressed by the trier of fact. *Id.*; *see also, e.g.*, *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 121 (3d Cir. 2004) (finding that survey's technical unreliability goes to weight not admissibility); *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1262-63 (9th Cir. 2001) (same); *Pediamed Pharm, Inc. v. Breckenridge Pharm., Inc.*, 419 F. Supp. 2d 715, 729 n.20 (D. Md. 2006) (same); 6 McCarthy, § 32:170 ("The majority rule is that while technical deficiencies can reduce a survey's weight, they will not prevent the survey from being admitted into evidence.").

Here, Mead Johnson contends that the surveys conducted by Schoen and Ridgeway, PBM's consumer experts, were inherently unreliable and irrelevant, and their testimony should have been excluded because they both surveyed the wrong universe of respondents. A "universe" is "that segment of the population whose perceptions and state of mind are relevant to the issues in the case." McCarthy on Trademarks and Unfair Competition § 32:159 (4th ed. 2003). A "survey of the wrong 'universe' will be of little probative value in litigation." *Id.* We are persuaded that in this case, while the survey sample may not exactly match the audience that received the advertisement, it is a sufficiently close approximation of the recipient pool to be admissible. Accordingly, the district court did not abuse its discretion in admitting the expert testimony.

Schoen conducted his survey by presenting an online survey to a group of participants located by a third party. The survey participants were pre-screened to ensure that they were (1) new parents or expecting a baby in the next six months, (2) were open to considering purchasing infant formula, (3) were not participating in the Women, Infants, and Children Nutrition Program, and (4) were or would be the primary or shared decision maker in choosing infant formula brands.

The Ridgway survey was based on interviews conducted among four groups of consumers, two of which were exposed to the disputed advertisement and two of which were exposed to a "control mailer" that contained similar, but more accurate statements about Mead Johnson's infant formula. All participants were new and expectant mothers. After viewing either the disputed advertisement or the control advertisement, participants dialed a toll free number and were questioned about the material.

The district court concluded that "while Mead Johnson has pointed out numerous ways in which it would have conducted Ridgeway's survey differently, its arguments do not demonstrate that the methods used were not of the type considered

reliable by experts in Ridgway's field." *PBM Products v. Mead Johnson*, 2010 WL 560 72, at \*12 (E.D. Va. Jan. 4, 2010). Specifically, the court concluded that Ridgway's control "was one appropriate method to investigate how alleged 'non-misleading' statements would effect [sic] recipients in comparison to the alleged misleading statements." *Id.* In addition, the court concluded that Mead Johnson's objections to the testimony went to the weight of the evidence, not admissibility, because "the facts of this case did not mandate one approach over another." *Id.* Mead Johnson's argument that Ridgway and Schoen surveyed the wrong universe bears directly on the weight accorded to the survey, not to its admissibility. We conclude without difficulty that the district court did not abuse its discretion by admitting the expert testimony.

B.

Mead Johnson also contends that the district court erred in admitting evidence of the 2001 and 2002 Lanham Act lawsuits filed by PBM. Mead Johnson argues that the evidence lacked relevance under Federal Rule of Evidence 401 and was more prejudicial than probative under Federal Rule of Evidence 403. These contentions lack merit.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. In addition to its relevance, the probative value of evidence must not be substantially outweighed by the danger that it will cause unfair prejudice. *See* Fed. R. Evid. 403; *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997). The "mere fact that the evidence will damage the defendant's case is not enough—the evidence must be *unfairly* prejudicial, and the unfair prejudice must *substantially* outweigh the probative value of the evidence." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) (emphasis in original) (quoting *United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir. 2004)). Evidence is

unfairly prejudicial "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and . . . this risk is disproportionate to the probative value of the offered evidence." *Id.*

We have previously noted that "[i]t is not an easy thing to overturn a Rule 403 ruling on appeal." *United States v. Udeozor*, 515 F.3d 260, 264 (4th Cir. 2008). Where the evidence is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996)); *see also Udeozor*, 515 F.3d at 264-65 ("Rule 403 is a rule of inclusion, generally favoring admissibility."). Put simply, a district court's decision to admit evidence over a Rule 403 objection "will not be overturned except under the most extraordinary circumstances, where that discretion has been plainly abused." *Udeozor*, 515 F.3d at 265 (internal quotation marks omitted).

Here, Mead Johnson contends that the prior litigation was not probative and its admission was "designed simply to paint Mead Johnson as a serial lawbreaker so that PBM counsel could inflame the jury both at opening and closing by pitching this case as one in which a lawless out-of-town corporation sought to 'crush' the small hometown defendant." Appellant Br. at 46. We disagree. The evidence of prior litigation between the parties in regards to baby formula advertisement is relevant because it speaks to Mead Johnson's intent in making its misleading claims. In particular, the Fourth Circuit has "assume[d], without deciding, that a defendant's history of false advertising could, in a proper case, operate to relieve the plaintiff of presenting extrinsic evidence of consumer confusion created by an impliedly false advertisement." *Scotts*, 315 F.3d at 282 n.5. Mead Johnson attempts to distinguish *Scotts* by claiming that "[i]ntent to deceive is not a corporate attribute; only individual corporate agents have intent (which may be imputed to the corporation for purposes of respondeat

superior liability)." Appellant Br. at 46 (quoting *Makor Issues & Rights v. Tellabs*, 513 F.3d 702, 707-708 (7th Cir. 2008)). However, this argument is inconsistent with *Scotts* because *Scotts*, like the case before us here, involved a major corporation.

Apart from its relevance, the probative value of the evidence was not substantially outweighed by the danger that it will cause unfair prejudice. Any unfair prejudice was limited by the court's exclusion of specific evidence regarding the settlements in the cases. Further, a jury limiting instruction was never sought. Contrary to Mead Johnson's allegation, the prior litigation was relevant to the instant case and its probative value was not substantially outweighed by any danger of unfair prejudice. Therefore, we conclude the district court did not abuse its discretion by admitting the evidence.

## IV.

We turn now to the propriety and scope of the district court's injunction. We review an order granting an injunction for abuse of discretion, reviewing factual findings for clear error and legal conclusions *de novo*. *Muffley ex rel. N.L.R.B. v. Spartan Mining Co.*, 570 F.3d 534, 543 (4th Cir. 2009) (citing *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004)). As previously stated, a court "has abused its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 573 (1985) (internal quotation omitted). "If the district court's account of the evidence is plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting

as the trier of fact, it would have weighed the evidence differently." *Id.* at 573-74.

Mead Johnson first argues that the district court abused its discretion by issuing an injunction because PBM failed to establish any risk of recurrence of the violation and because the mailer had been discontinued prior to trial. Second, Mead Johnson argues that even if the district court properly invoked its authority to enjoin Mead Johnson's advertising claims, that the district court abused its discretion by enjoining conduct that is beyond the harm PBM sought to redress and proved at trial. We address each argument in turn.

A.

As noted above, a plaintiff asserting a false advertising claim under the Lanham Act must establish:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Scotts Co.*, 315 F.3d at 272 (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir.), *cert. denied*, 537 U.S. 1001 (2002)). Here, the jury returned a verdict in favor of PBM on its false advertising claim and awarded PBM $13.5 million in damages. 2010 WL 957756, at *2.

When a violation has been established, the Lanham Act vests district courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to . . . prevent a violation under [§ 1125(a)]." 15 U.S.C. § 1116(a). Before an injunction may issue, however, the party seeking the injunction must demonstrate that (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate; (3) the balance of the hardships favors the party seeking the injunction; and (4) the public interest would not be disserved by the injunction. *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006).

We readily conclude in the case before us, mindful of the principles set forth in *eBay*, that injunctive relief was proper. The district court concluded that PBM suffered from irreparable harm based primarily on the fact that Mead Johnson's advertising misled customers. 2010 WL 957756, at *2. In addition, the court concluded that "trial testimony by representatives of both parties established that in addition to lost sales, false advertising also inflicts substantial harm on a company's reputation and goodwill." As the Second Circuit explained in *Coca-Cola Co. v. Tropicana Products, Inc.*:

> [T]he most difficult element to demonstrate when seeking an injunction against false advertising is the likelihood that one will suffer irreparable harm if the injunction does not issue. It is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement. Too many market variables enter into the advertising-sales equation. Because of these impediments, a Lanham Act plaintiff who can prove actual lost sales may obtain an injunction even if most of his sales decline is attributable to factors other than the competitor's false advertising. In fact, he need not even point to an actual loss or diversion of sales.

The Lanham Act plaintiff must, however, offer something more than a mere subjective belief that he is likely to be injured as a result of the false advertising, he must submit proof which provides a reasonable basis for that belief. The likelihood of injury and causation will not be presumed, but must be demonstrated in some manner.

690 F.2d 312, 316 (2d Cir. 1982) (internal citations omitted); *see also Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 189-90 (2d Cir. 1980). Here, we cannot say the district court abused its discretion in finding irreparable harm and in issuing a permanent injunction; not only did the jury conclude that Mead Johnson misled consumers, the evidence at trial demonstrated that PBM's reputation was, and potentially continues to be, damaged. In fact, the entire goal of the 2008 mailer was to "deter moms from considering evaluating commodity brands" and to influence them to not even "consider a switch to a store brand formula." J.A. 2316-17.

Furthermore, PBM demonstrated that remedies at law are inadequate. While the jury awarded PBM substantial damages, the damages judgment compensates PBM for harm that flowed directly from the mailer. As the district court aptly noted, the injunction prevents Mead Johnson from "infecting the marketplace with the same or similar claims in different advertisements in the future." 2010 WL 957756, at *3. This perspective is consistent with the view that the mere fact that a plaintiff may recover damages does not negate his right to injunctive relief. *See Lyons P'ship, LP v. Morris Costumes, Inc.*, 243 F.3d 789, 801 (4th Cir. 2001) (remanding for the entry of a permanent injunction and a determination of the amount of damages award). Tellingly, Mead Johnson's own brief acknowledges that its appeal is to provide it with the opportunity to make the same claims again. *See* Appellant Br. at 33 (stating that Mead Johnson "should be entitled to advertise the true fact that its Enfamil formula is the 'only' product

'clinically proven' to improve brain and eye development versus the same unsupplemented formula.").

We further agree with the district court that the balance of the hardships favors PBM. As the district court recognized, Mead Johnson "simply has no equitable interest in perpetuating the false and misleading claims in the Mailer . . . . Mead Johnson's main contentions concern the nature of injunctive relief, not whether that relief should be granted in the first instance, and therefore do not mandate a different conclusion." 2010 WL 957756, at *3. As the litigation history of the parties demonstrates, despite having twice been restrained from disseminating misleading advertising, Mead Johnson continued to do so. PBM cannot fairly compete with Mead Johnson unless and until Mead Johnson stops infecting the marketplace with misleading advertising.

Finally, the district court did not err in its finding that the public interest heavily favors injunctive relief. As the district court concluded, "it is self evident that preventing false or misleading advertising is in the public interest in general." 2010 WL 957756, at *3 (citing *Scotts*, 315 F.3d at 286). "There is a strong public interest in the prevention of misleading advertisements." *Scotts*, 315 F.3d at 286. This interest is perhaps heightened when, as is the case here, the misleading information pertains to issues of public health and infant well-being. Accordingly, we conclude the district court did not abuse its discretion by issuing the injunction.

## B.

We next address the scope of the injunction. "It is well established that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Kentuckians for Commonwealth v. Rivenburgh*, 317 F.3d 425, 436 (4th Cir. 2003) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). To be sure, "[a]n injunction should be carefully addressed to the circum-

stances of the case." *Virginia Soc'y for Human Life v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001) (citing *Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 217 (4th Cir. 1993)). In other words, the court will vacate an injunction if it is "broader in scope than that necessary to provide complete relief to the plaintiff" or if an injunction does "not carefully address only the circumstances of the case." *Rivenburgh*, 317 F.3d at 436.

Here, the district court enjoined the two express claims made in the mailer and concluded that the record supported an injunction including the express claims because such an injunction would not be inconsistent with the jury's verdict. *See Ohio-Sealy Mattress Mfg. v. Sealy*, 585 F.2d 821, 844 (7th Cir. 1978) (noting that when the jury has issued a general verdict, the court may not make factual findings when fashioning an injunction that are "contrary to or inconsistent with the jury's resolution"). Mead Johnson's primary contention is that because the general jury verdict did not specify which of the four statements in the mailer the jury found to be false and/or misleading, the injunction must be limited only to the mailer or other advertisements not colorably different from the mailer. We disagree.

We are persuaded that the injunction is not overbroad because it only reaches the specific claims that the district court found to be literally false. If the injunction were limited to the mailer and did not enjoin the false claims made therein, Mead Johnson would be free to use false statements in future advertisements, contrary to the very purpose of injunctive relief under the circumstances shown here. As the district court noted, to make its claim that only Enfamil has been clinically proven to promote infant development, Mead Johnson relied primarily on a group of government funded clinical studies. However, the court concluded that Mead Johnson's reliance was unjustified because trial testimony established that the studies' conclusion was not limited to Mead Johnson formula, but to any formula that contained similar amounts of

the same ingredients. In addition, since the studies it relied upon were completed, the Mead Johnson formula at issue had undergone at least 19 changes. Consequently, the district court concluded, the "only clinically proven" claim was misleading. Because the district court's account of the evidence is plausible in light of the record viewed in its entirety, its factual findings are not clearly erroneous. *See TFWS v. Franchot*, 572 F.3d 186, 196 (4th Cir. 2009) ("[W]hen there are two permissible views of the evidence, the district court's choice between them cannot be clearly erroneous.").

## V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.