**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 12-1571**

───────────────

FRANCIS CLIFFORD TUCKER,

             Plaintiff - Appellant,

      v.

UNITED STATES OF AMERICA,

             Defendant - Appellee.

───────────────

Appeal from the United States District Court for the Northern
District of West Virginia, at Wheeling.  Frederick P. Stamp,
Jr., Senior District Judge.  (5:08-cv-00105-FPS-JES)

───────────────

Submitted:  October 16, 2012        Decided:  December 5, 2012

───────────────

Before DIAZ and FLOYD, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

───────────────

Affirmed by unpublished per curiam opinion.

───────────────

Paul J. Harris, Wheeling, West Virginia, for Appellant.  Kathryn
Keneally, Assistant Attorney General, Jonathan S. Cohen, Karen
G. Gregory, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE,
Washington, D.C.; William J. Ihlenfeld, II, United States
Attorney, Wheeling, West Virginia, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this civil action by federal taxpayer Francis C. Tucker (Tucker) against the United States of America (the government) for the alleged wrongful disclosures of his federal income tax return information to third parties, the district court entered final judgment in favor of the government. Tucker noted a timely appeal and challenges the judgment on various grounds. We affirm.

## I.

Pursuant to 26 U.S.C. § 6103(a), federal tax return information generally must be kept confidential by the government. "Return information" includes:

> a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing . . . .

Id. § 6103(b)(2)(A). Pursuant to § 7431(a)(1), a federal taxpayer is authorized to bring a civil action against the government "[i]f any officer or employee of the United States knowingly, or by reason of negligence, inspects or discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103 . . . ." Id.

Tucker's complaint alleged that two special agents of the United States Internal Revenue Service (the IRS), who were assisting in a federal grand jury investigation of his income tax liabilities for tax years 2002 through 2007, made unauthorized disclosures of his return information to six individuals while interviewing them in connection with the investigation. With one exception, the allegations in Tucker's complaint were adjudicated pursuant to a one-day bench trial.

In the district court's scheduling order filed on August 23, 2010, the district court set November 22, 2010 as the deadline for the parties to file any motions to amend the pleadings. Tucker did not move to amend his complaint prior to this deadline. The pretrial order filed on April 11, 2011 listed Tucker's theories of liability as follows: (1) Special Agent Brad Nickerson (Agent Nickerson) disclosed to Tucker's former wife Cathy West "that [Tucker] was going to jail, that he was evading his income tax and they were going to prove it," (J.A. 153); (2) Agent Nickerson and Special Agent Ryan Korner (Agent Korner) disclosed to Tucker's brother Tommy Tucker "that [Tucker] was going to jail and they had him for tax evasion," (J.A. 154); (3) Agent Nickerson disclosed to Tucker's friend Gregory George that "[Tucker] was [being investigated] for tax evasion" and stated three times that "[Tucker] was going to jail," id.; (4) Agent Nickerson disclosed to Tucker's former

- 3 -

brother-in-law Thomas West, Jr. "that [Tucker] was being investigated for tax evasion and [Tucker] was going to go to jail," id.; (5) Agent Nickerson disclosed to Tucker's then wife Donetta LaRue "that [Tucker] was probably going to go to jail," id.; and (6) either Agent Nickerson or Agent Korner told Tucker's son Gary Tucker that "he didn't see any reason why he should go up the river for something somebody else did," id. Prior to trial, the district court granted summary judgment in favor of the government with respect to the alleged "up the river" comment on the basis that such comment, even if made, did not constitute a disclosure of Tucker's return information.

The case proceeded to a bench trial on the remaining allegations. As witnesses for the plaintiff, Tucker called Agents Nickerson and Korner, Tommy Tucker, Cathy West, Thomas West, Donetta LaRue, and Gregory George. Tucker also took the stand. As witnesses for the defense, the government called Agents Nickerson and Korner.

During their respective testimonies, Agents Nickerson and Korner denied making the disclosures alleged in the complaint, denied they heard each other make such disclosures, and explained that the IRS trained them not to make such disclosures. Additionally, Agent Korner testified that disclosure to a third-party witness that Tucker was under investigation for tax evasion would have been unhelpful because,

"if anything, it would probably cause the third-party witness to shut down or clam up . . . ." (J.A. 305).

Tommy Tucker testified that during one of three interviews of him conducted by Agents Nickerson and Korner, one of these agents (he could not remember which one) told him that his brother Tucker was going to jail for tax evasion. Cathy West testified that when Agents Nickerson and Korner interviewed her, "they more than indicated that . . . they wanted to [put Tucker in jail] and that they were investigating him for income tax evasion," although she could not remember their exact words. (J.A. 337). The end result of Thomas West's testimony was that, as of the date of trial, he could not state whether Agent Nickerson or Korner informed him during the interview that Tucker was going to jail. On the witness stand, Donetta LaRue could not recall the exact words the agents used, but she did not think they used the word jail. Rather, "[she] recall[ed] getting the impression from them that [Tucker] was going to serve some time." (J.A. 355). Gregory George testified that at the start of his interview by Agents Nickerson and Korner "[he] asked them what it was referring to," and "[the agents] said, 'We [a]re here to talk about putting Mr. Tucker in jail.'" (J.A. 367).

Based upon the district court's review of the evidence and resolution of factual disputes created thereby, the district

- 5 -

court concluded that Tucker failed to prove by a preponderance of the evidence that either Agent Nickerson or Agent Korner made any statements during the interviews to the third-party witnesses that Tucker was going to jail, Tucker was being investigated for income tax evasion, or any similar statements. Accordingly, the district court found in favor of the government with respect to Tucker's allegations tried before the court.

## II.

On appeal, Tucker contends the district court erred by entering judgment in favor of the government with respect to his allegations of wrongful disclosure of return information under § 7431(a)(1), which the district court resolved pursuant to a bench trial. Tucker's contention is without merit.

We review a judgment following a bench trial under a mixed standard of review; findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. Roanoke Cement Co. v. Falk Corp., 413 F.3d 431, 433 (4th Cir. 2005). The law is well established that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). Moreover, "when a district court's factual finding in a bench trial is

based upon assessments of witness credibility, such finding is deserving of the highest degree of appellate deference." Evergreen Int'l, S.A. v. Norfolk Dredging Co., 531 F.3d 302, 308 (4th Cir. 2008) (internal quotation marks omitted).

Having reviewed the parties' briefs and the record before us, we perceive no basis on which to overturn the district court's judgment with respect to Tucker's allegations tried pursuant to a bench trial. In this regard, we defer to the district court's findings of fact—premised in large part on witness credibility determinations—that Agents Nickerson and Korner did not disclose return information with respect to Tucker in violation of § 6103(a) as Tucker alleged. Accordingly, we affirm the judgment with respect to Tucker's allegations of wrongful disclosure of return information under § 7431(a)(1), which the district court resolved pursuant to a bench trial.

III.

Tucker contends the district court erred by granting summary judgment in favor of the government with respect to his allegation that Agent Korner told his son Gary Tucker that "he didn't see any reason why he should go up the river for

something somebody else did."[*] (J.A. 154). According to Tucker, the statement constituted return information under § 6103(b)(2)(A), and thus is actionable under § 7431(a)(1). Tucker's contention is without merit.

We review the grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. PBM Prods., LLC v. Mead Johnson & Co., 639 F.3d 111, 119 (4th Cir. 2011). Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Id.

We agree with the district court that the alleged "up the river" comment did not constitute a disclosure of Tucker's return information as defined in § 6103(b)(2)(A), and therefore, is not actionable under § 7431(a)(1). Accordingly, we affirm the judgment in favor of the government with respect to this statement.

---

[*] Although there is confusion in the record below as to whether Tucker alleged Agent Nickerson or Agent Korner made the "up the river" comment to Gary Tucker, on appeal, Tucker identifies Agent Korner as such agent. Under the district court's reasoning in granting summary judgment, the identity of the agent is irrelevant.

IV.

Tucker next contends the district court erred in excluding evidence from being presented at trial to prove that when Agents Nickerson and Korner introduced themselves to certain third party interviewees, sixteen in all, the agents stated that they were assisting the United States Attorney in a grand jury investigation of Tucker.  Five of these third parties testified at trial, while the remaining eleven were listed in the pretrial order as individuals Tucker "may call to testify at trial if the need arises . . . ."  (J.A. 141) (emphasis omitted).  According to Tucker, had such evidence been admitted, he would have been entitled to amend his complaint to conform to such evidence, and thus, the district court erred when it denied his motion to this effect.  Tucker's contentions are without merit.

A district court is afforded wide discretion in determining the admissibility of evidence at trial, United States v. Abel, 469 U.S. 45, 54 (1984), and "the district court's evidentiary determinations should not be overturned except under the most extraordinary of circumstances," United States v. Aramony, 88 F.3d 1369, 1377 (4th Cir. 1996) (internal quotation marks omitted).  Therefore, we review a district court's exclusion of evidence proffered at trial under the deferential abuse of discretion standard.  Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999).  Moreover, whether or not a plaintiff

should be allowed to amend his complaint to conform to the evidence admitted at trial is a discretionary determination to be made by the district court, which determination we also review for abuse of discretion. <u>Quillen v. International Playtex, Inc.</u>, 789 F.2d 1041 (4th Cir. 1986).

As explained in its "<u>Findings of Fact and Conclusions of Law</u>," filed March 29, 2012, the district court excluded Tucker's proffered evidence regarding the manner in which Agents Nickerson and Korner introduced themselves on the ground of untimeliness. In this regard, the district court specifically explained:

> During the bench trial, plaintiff attempted to submit evidence relating to certain issues, that is the IRS agents' introduction of themselves to certain third-party witnesses which plaintiff asserted was in violation of 26 U.S.C. § 6103, namely that persons interviewed were told by the agents by way of introduction that Francis Tucker was under a grand jury investigation. The defendant objected to this testimony as being untimely. This Court decided to hear this testimony and then decide at a later date whether it should be considered as evidence in this civil action. This Court now finds that this evidence is untimely as those claims were never made in the complaint and the plaintiff never sought to amend his complaint to include these allegations. Moreover, the plaintiff never supplemented any responses to discovery requests by the defendant to include this information and these matters were never addressed at the pretrial conference or in the joint pretrial order.
>
> Accordingly, this evidence must be deemed untimely and will not be considered or admitted as evidence in this case.

(J.A. 771-72).

As explained in its memorandum opinion and order denying Tucker's motion for leave to amend his complaint to conform to the evidence admitted at trial, the district court denied the motion on the ground that the government would be unfairly prejudiced if the motion were granted "since the United States was effectively precluded from conducting any discovery regarding these allegations under the existing scheduling order which provided for discovery prior to trial." (J.A. 752-53). In this regard, the district court specifically explained:

> As previously noted by the Court in its ruling not permitting this evidence to be presented at trial, plaintiff Tucker did not make these allegations concerning the manner of introduction in the complaint, did not seek to amend the complaint, did not set forth these allegations in response to discovery, and did not include these matters at any pretrial conference or in the joint pretrial order. Not only is this information untimely, but the inclusion of this information at this point in the case would be unfairly prejudicial to the United States. As is noted by the United States, there are exceptions to the rules prohibiting improper return disclosures and the United States did not have an opportunity to adequately address those exceptions even though the United States did present some evidence at trial to demonstrate that it had met the requirements of § 6103(k)(6) allowing such disclosures. The United States submits that had it been aware of these allegations prior to trial, it could have conducted additional discovery on this issue in order to present trial testimony defending the assertions of plaintiff Tucker, including the presentation of evidence regarding a good faith defense under 26 U.S.C. § 7431(b)(1).

(J.A. 751-52).

We find no abuse of discretion in the district court's decision to exclude Tucker's proffered evidence regarding the manner in which Agents Nickerson and Korner sought to introduce themselves to certain third-party witnesses. A *fortiori*, we find no abuse of discretion in the district court's denial of Tucker's motion to amend his complaint to conform it to such evidence.

## V.

Having found no error in the proceedings below as contended by Tucker, we affirm the judgment in favor of the government *in toto*. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED