**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4122**

UNITED STATES OF AMERICA,

    Plaintiff – Appellee,

  v.

LAMBROS KATSIPIS,

    Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Mark S. Davis, District Judge. (2:13-cr-00070-MSD-TEM-3)

Submitted: January 22, 2015    Decided: February 4, 2015

Before SHEDD and KEENAN, Circuit Judges, and DAVIS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Alan H. Yamamoto, Alexandria, Virginia, for Appellant. Sam Hirsch, Acting Assistant Attorney General, Kenneth Nelson, J. David Gunter, II, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Lambros Katsipis was the Chief Engineer of the M/V Antonis G. Pappadakis ("the Pappadakis"), an ocean-going bulk cargo carrier. During an investigation of the Pappadakis by the United States Coast Guard, four of Katsipis's fellow crewmembers alleged that he ordered them to set up a bypass system whereby bilge water would be pumped from the Pappadakis's holding tank, through the ship's Marine Sanitation Device (rather than filtered thorough the ship's oily water separator), and into the sea. These crewmembers also informed the Coast Guard that Katsipis urged them to lie to the investigators about the system.

The Pappadakis's Oil Record Book, maintained by Katsipis, did not reflect a bypass system.[*] Lieutenant Junior Grade Crystal Tucker closely examined the Pappadakis's Oil

---

[*] Pursuant to MARPOL, an international treaty governing ocean-going vessels, "Congress enacted the Act to Prevent Pollution from Ships ('APPS')." Angelex Ltd. v. United States, 723 F.3d 500, 502 (4th Cir. 2013) (citing 33 U.S.C. §§ 1901-15 (2012)). "Regulations attendant to APPS" require that each vessel maintain an Oil Record Book recording all "ballasting or cleaning of fuel oil tanks;" the "discharge of [dirty] ballast or cleaning water from fuel oil tanks;" the "[d]isposal of oil residue;" and the "[d]ischarge overboard or disposal otherwise of [accumulated] bilge water[.]" Id. at 502 (quoting 33 C.F.R. § 151.25(a), (d) (2015)). All such entries must "be signed by the officer or officers in charge of the operations concerned." § 151.25(h). It is unlawful to fail to maintain an accurate Oil Record Book. 33 U.S.C. § 1908(a) (2012).

2

Record Book. Tucker prepared a summary chart, which showed that Katsipis's predecessor ran the Oily Water Separator sixteen times, processing 325 cubic meters of bilge water, in eleven-and-a-half months. It also showed that Katsipis ran the Oily Water Separator only seven times, processing 25 cubic meters of bilge water, over the same amount of time. Tucker acknowledged, however, that the chart was of limited usefulness, as it accounted for no potentially confounding variables over the aggregate twenty-three month period.

Kristy Juaire, a chemist at the Coast Guard's Marine Safety Laboratory, conducted gas chromatography and mass spectrometry tests on the Pappadakis. Her tests revealed fuel oil, lubricating oil, or petroleum oil in the Marine Sanitation Device's sewage tank and discharge hose. She noted that this oil's hydrocarbon "fingerprint" was not the same as samples taken from elsewhere on the Pappadakis. Even so, she explained that this is to be expected where mixing and weathering might, over time, result in a different combination of hydrocarbon "fingerprints" at different locations.

Following a trial, a jury convicted Katsipis of falsification of records, in violation of 18 U.S.C. § 1519 (2012), knowing failure to maintain an accurate oil record book, in violation of 33 U.S.C. § 1908(a) (2012), and obstruction of justice, in violation of 18 U.S.C. § 1505 (2012). The court

3

sentenced him to one year's probation, including four months of community confinement.

On appeal, Katsipis contends that the district court abused its discretion in denying his motion in limine and admitting (1) Juaire's expert testimony, and (2) Tucker's summary chart. We affirm.

First, we review the admission of expert testimony under Federal Rules of Evidence 702 and 403 for abuse of discretion. United States v. Wilson, 484 F.3d 267, 273 (4th Cir. 2007) (Rule 702); United States v. Forrest, 429 F.3d 73, 79 (4th Cir. 2005) (Rule 403). Expert testimony is admissible if it is reliable and relevant. PBM Products, LLC v. Mead Johnson & Co., 639 F.3d 111, 123 (4th Cir. 2011). Reliable expert testimony is "based on scientific, technical, or other specialized knowledge and not on belief or speculation, and [any] inferences must be derived using scientific or other valid methods." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 200 (4th Cir. 2001). Relevant expert testimony "will assist the trier of fact[.]" United States v. Barnette, 211 F.3d 803, 815 (4th Cir. 2000). Such assistance exists where the evidence "tends to make the existence of a fact of consequence to an issue in the case more probable or less probable[.]" United States v. Queen, 132 F.3d 991, 994 (4th Cir. 1997) (internal quotation marks omitted); see Daubert v. Merrell Dow Pharm.,

4

Inc., 509 U.S. 579, 587 (1993) (instructing courts to look to Fed. R. Evid. 401 when analyzing relevance under 702).

Even so, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. In regard to experts, the Supreme Court has cautioned that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Daubert, 509 U.S. at 592-93. That being said, prohibition is required "only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." United States v. Mohr, 318 F.3d 613, 618 (4th Cir. 2003).

After reviewing the record, we conclude that the district court did not abuse its discretion in admitting Juaire's testimony. Katsipis did not question Juaire's reliability, and her testimony was relevant because it corroborated the crewmembers' assertions that the bypass system existed.

5

Second, as stated above, we review objections to the admissibility of evidence under Rule 403 for abuse of discretion. Forrest, 429 F.3d at 79. While Fed. R. Evid. 1006 typically governs the admission of summary charts, Katsipis only claims that the chart presented a danger of prejudice that outweighed its probative value, not that it failed to meet the standard for admission under Rule 1006. Accordingly, we review Katsipis's claim under Rule 403. Cf. United States v. Lemire, 720 F.2d 1327, 1347-48 (D.C. Cir. 1983).

After reviewing the record, we conclude that the district court did not abuse its discretion in admitting Tucker's chart. The chart provided the jury with a big-picture look at the use of the Oily Water Separator over the course of two years. While it did not account for all of the confounding variables, Tucker's acknowledgment of that fact ameliorates the potential for prejudice. Katsipis also had ample opportunity, on cross examination, to highlight the limitations of the chart.

Accordingly, the judgment of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6