**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RAY COMMUNICATIONS,
INCORPORATED,

          *Plaintiff-Appellant,*

      v.

CLEAR CHANNEL COMMUNICATIONS,
INCORPORATED; CLEAR CHANNEL
BROADCASTING, INCORPORATED;
KATZ MEDIA GROUP, INCORPORATED;
KATZ COMMUNICATIONS,
INCORPORATED,

          *Defendants-Appellees.*

No. 11-1050

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, District Judge.
(2:08-cv-00024-BO)

Argued: December 7, 2011

Decided: March 8, 2012

Before KING, GREGORY, and DAVIS, Circuit Judges.

---

Vacated and remanded by published opinion. Judge Davis
wrote the opinion, in which Judge King and Judge Gregory
joined.

---

**COUNSEL**

**ARGUED:** Michael Steven Culver, MILLEN, WHITE, ZELANO & BRANIGAN, PC, Arlington, Virginia, for Appellant. Bart Wescott Huffman, COX SMITH MATTHEWS INCORPORATED, San Antonio, Texas, for Appellees. **ON BRIEF:** Marissa Helm, COX SMITH MATTHEWS INCORPORATED, San Antonio, Texas, for Appellees.

---

**OPINION**

DAVIS, Circuit Judge:

Plaintiff-Appellant Ray Communications, Inc. ("RCI") filed this action alleging trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); federal unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and unfair competition and deceptive trade practices under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, thereby challenging the use of its federally-registered AGRI-NET trademark by Defendants-Appellees Clear Channel Communications, Inc., Clear Channel Broadcasting, Inc., Katz Media Group, Inc., and Katz Communications, Inc. (collectively "Clear Channel" or "Appellees"). RCI appeals the district court's order granting summary judgment to Clear Channel on its affirmative defense of laches. *Ray Commc'ns, Inc. v. Clear Channel Commc'ns*, 760 F. Supp. 2d 544 (E.D.N.C. 2010).

Upon our de novo review of the summary judgment record,[1] we conclude that the district court erred in determining that

---

[1]"In reviewing a summary judgment, we apply de novo the same standard that the district court was required by law to apply for granting the motion for summary judgment." *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 817 (4th Cir. 1995).

Clear Channel established its defense as a matter of law and, separately, in failing to consider whether laches bars RCI's claim for prospective injunctive relief. Accordingly, we vacate the judgment and remand this action for further proceedings consistent with this opinion.

## I.

RCI is a radio network owned by William ("Bill") and Lisa Ray, the company's corporate representatives in this suit. RCI owns the federal registration for the service mark AGRINET. The U.S. Patent and Trademark Office initially issued the AGRINET registration to Charlottesville Broadcasting Corporation ("CBC") in 1972 for "educational services rendered through the medium of radio; namely, a program of interest to farmers." J.A. 37. Bill Ray began his career in radio programming as a farm broadcaster with CBC in 1966. CBC licensed the AGRINET mark to Bill Ray in 1976 and granted him a full assignment of rights to the mark in 1986. RCI maintains that it has used, and continues to use, the AGRINET mark to identify itself as the source of agricultural news radio programming.

Clear Channel is also a radio network. In the late 1970s and early 1980s, Clear Channel's predecessors began using the terms Oklahoma Agrinet, Tennessee Agrinet, and Kentucky Agrinet, without RCI's permission, to identify their agricultural news programming on the air and in marketing.[2] Clear Channel has also used the names Agrinet of the High Plains and Alabama Agrinet to identify its agricultural news networks in Texas and Alabama, respectively. It is undisputed that RCI was aware of these uses.

---

[2]Clear Channel acquired Oklahoma Agrinet, operating as part of the Oklahoma News Network ("ONN"), from Broad Street Communications Corporation in 1984; Tennessee Agrinet, from Paxson Communications Corporation in 1997; and Kentucky Agrinet, operating as part of the Kentucky Network, from The American Network Group, Inc., in 1992.

RCI contends that it permitted certain uses of the AGRI-NET mark by Clear Channel's predecessors. For instance, RCI claims that it gave several oral licenses without consideration to individual employees of Clear Channel's predecessor companies sometime before 1986, including Jimmy "Krit" Stubblefield (Kentucky Agrinet), Dan Gordon (Tennessee Agrinet), and Ron Hays (Oklahoma Agrinet). RCI asserts that it terminated the license to Stubblefield in 1992, terminated the license to Gordon in 1997, and terminated the license to Hays in 2006. RCI maintains that it has never licensed or otherwise permitted Clear Channel to use Alabama Agrinet or Agrinet of the High Plains. Of the marks RCI claims to have permitted Clear Channel's predecessors to use, Clear Channel continues to use only Oklahoma Agrinet and Tennessee Agrinet.[3] Clear Channel asserts that neither it nor its predecessors have ever had any agreement with RCI regarding use of the AGRINET mark.

On June 20, 2008, RCI filed the instant trademark infringement action against Clear Channel Communications, Inc., Clear Channel Broadcasting, Inc., and Katz Media Group, Inc., in the Eastern District of North Carolina. RCI sought injunctive and monetary relief under the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), and the UDTPA, N.C. Gen. Stat. § 75-1.1. RCI subsequently amended its complaint to join Katz Communications, Inc. Clear Channel asserted several affirmative defenses, including laches, acquiescence, and

---

[3]Jack Crowner, a broadcaster employed by Clear Channel, testified at his deposition that Bill Ray approached him at a National Association of Farm Broadcasters conference in 1992 and requested that he stop using the name Kentucky Agrinet. Crowner testified that he did not believe RCI had a legal right to stop his station from using the mark, but that he changed the station's mark from "Kentucky Agrinet" to "Kentucky Agnet" as "strictly a favor" because Bill Ray was his friend. J.A. 1017-18. Clear Channel permanently stopped using Kentucky Agrinet at that point, so that particular use of the Agrinet mark is not at issue in this case. Clear Channel also stopped using Tennessee Agrinet for approximately one year in conjunction with settlement negotiations.

abandonment. After the close of discovery, Clear Channel moved for summary judgment on its affirmative defenses and, in the alternative, for partial summary judgment on RCI's claim for damages. With respect to its laches defense, Clear Channel argued that RCI knew of the allegedly infringing use of the AGRINET mark by Appellees, but unreasonably and inexcusably waited more than 30 years to enforce its rights, resulting in undue prejudice to them.

The district court granted Clear Channel's motion for summary judgment as to its affirmative defense of laches, entered judgment in favor of Clear Channel, and dismissed as moot several outstanding motions. The district court concluded that Clear Channel had established its affirmative defense of laches as a matter of law and that no reasonable jury could find in favor of RCI, but it did not separately address whether application of laches barred both damages and injunctive relief. The district court also did not address Clear Channel's affirmative defenses of acquiescence or abandonment, nor did it consider Clear Channel's motion for partial summary judgment on RCI's claim for monetary damages. RCI timely filed this appeal.

## II.

Preliminarily, we note that on appeal RCI claims infringement only as to Clear Channel's continued use of Oklahoma Agrinet, Tennessee Agrinet, and Agrinet of the High Plains. With respect to these particular uses of its federally-registered AGRINET trademark, RCI first contends that the district court erred in granting summary judgment on the basis of laches because it improperly resolved genuine disputes of material fact and failed to draw all reasonable inferences in favor of RCI, the non-moving party. RCI further maintains that the district court erred in applying laches to preclude both injunctive and monetary relief. We consider these issues in turn.

A.

At the outset, however, we clarify the two-part standard applicable to our review of a laches determination made on summary judgment. As is generally the case, we review the district court's grant of summary judgment de novo. *See PBM Prods., L.L.C. v. Mead Johnson Nutritionals, L.L.C.*, 639 F.3d 111, 119 (4th Cir. 2011). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On the other hand, we review the district court's application of the equitable doctrine of laches for abuse of discretion. *PBM Prods., L.L.C.*, 639 F.3d at 119. The court "has abused its discretion if its decision is guided by erroneous legal principles or rests upon a clearly erroneous factual finding." *Brown v. Nucor Corp.*, 576 F.3d 149, 161 (4th Cir. 2009).

Accordingly, where a district court has granted summary judgment on the basis of laches, we review the sufficiency of the evidence in support of or in opposition to summary judgment de novo, but we review the district court's application of laches elements to the undisputed material facts for abuse of discretion. *See Pro Football, Inc. v. Harjo*, 565 F.3d 880, 882 (D.C. Cir. 2009) (internal citations omitted); *Chattanooga Mfg. v. Nike, Inc.*, 301 F.3d 789, 792-93 (7th Cir. 2002). In other words, "as long as the district court applies the correct legal standard on summary judgment and does not resolve disputed issues of material fact against the non-movant, its determination of whether the undisputed facts warrant an application of laches is reviewed for an abuse of discretion." *Nat'l Ass'n of Gov't Emp. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 707 (5th Cir. 1994); *see also Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999) ("[I]n cases in which there is no dispute as to the material facts, the district court's decision that laches bars the action is subject to review by the abuse of discretion standard.") (internal citations and quotation marks omitted).

Where, as here, the movant seeks summary judgment on an affirmative defense, it must conclusively establish all essential elements of that defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (defendant may prevail on a motion for summary judgment on an affirmative defense when it has produced credible evidence that would entitle it to a directed verdict if not controverted at trial). When the defendant has produced sufficient evidence in support of its affirmative defense, the burden of production shifts to the plaintiff to "come forward with specific facts showing that there is a genuine issue for trial." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 614 (4th Cir. 1999) (internal citations and quotation marks omitted). However, "where the movant fails to fulfill its initial burden of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing." *Giannullo v. City of New York*, 322 F.3d 139, 140-41 (2d Cir. 2003) (internal citation and quotation marks omitted).

## B.

Turning to the merits of this appeal, we first consider whether the district court erred in concluding that Clear Channel is entitled to summary judgment on its affirmative defense of laches. "In order to prevail under §§ 32(1) and 43(a) of the Lanham Act for trademark infringement and unfair competition, respectively, a complainant must demonstrate that it has a valid, protectible trademark and that the defendant's use of a colorable imitation of the trademark is likely to cause confusion among consumers." *Lone Star Steakhouse & Saloon, Inc. v. Max Shayne, Inc.*, 43 F.3d 922, 930 (4th Cir. 1995) (citing 15 U.S.C. § 1114(1)). Thus, "there is a distinction between the rights that flow from ownership," most notably the exclusive right to use the registered mark in commerce, "and the remedies — including an owner's right to enjoin another person's use of a mark — that ripen only when there is a likelihood of

confusion." *What-A-Burger of Virginia, Inc. v. Whataburger, Inc. of Corpus Christi, Texas*, 357 F.3d 441, 447 n.4 (4th Cir. 2004) (internal citations omitted); *see also* 15 U.S.C. § 1057(b). While the Lanham Act does not contain a limitations provision, it provides that trademark infringement claims are subject to several enumerated defenses or defects, including the equitable doctrines of laches, estoppel, and acquiescence. *See* 15 U.S.C. § 1115(b)(9).

Courts apply laches to address the inequities created by a trademark owner who, despite having a colorable infringement claim, has unreasonably delayed in seeking redress to the detriment of the defendant. *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 461 (4th Cir. 1996); *Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990). In determining whether laches operates as a defense to a trademark infringement claim, we consider at least the following factors: (1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user has been unduly prejudiced by the owner's delay. *What-A-Burger*, 357 F.3d at 448-49; *Sara Lee*, 81 F.3d at 461 n.7 (citing *Brittingham*, 914 F.2d at 456).[4] In this case, the district court found that Clear Channel met its burden of proof on the basis of undisputed evidence as to each of these factors, thereby establishing the affirmative defense of laches as a matter of law. We are persuaded, however, that the district court failed to apply the proper legal standard under the

---

[4]The district court mistakenly stated that the first prong of the laches test applied by this court in *What-A-Burger* is "whether the owner knew of the *unlicensed* use," rather than whether the owner knew of an *infringing* use. *See Ray Commc'ns*, 760 F. Supp. 2d at 546 (emphasis added) (citing *What-A-Burger*, 357 F.3d at 448-49). On the contrary, the question whether an infringing use was licensed is relevant to the second prong, namely the reasonableness of the trademark owner's delay in filing suit. Despite its misstatement of the laches test, however, the district court addressed each of the appropriate factors and found them satisfied in this case. Thus, we find the error of no consequence.

first prong of laches (knowledge of an infringing use) and that, as to the third prong (prejudice arising from delay), the evidence is insufficient to establish Clear Channel's entitlement to the affirmative defense as a matter of law.

1.

The question whether a trademark owner knew or should have known that it had a viable claim for infringement is determined by an objective standard. *See What-A-Burger*, 357 F.3d at 449 (citing *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1206 (11th Cir. 1997)). With respect to this inquiry, the district court correctly noted that "it is uncontested that Plaintiff knew of Defendants' use of the marks." *Ray Commc'ns*, 760 F. Supp. 2d at 546. On summary judgment, both parties relied upon data from two annual trade publications, the National Association of Farm Broadcasters directory ("NAFB Directory") and AgriMarketing magazine. The custodians of these publications attested that each is generally used and relied upon in the industry. Both the NAFB Directory and AgriMarketing magazine list information about radio programming networks, including address, phone number, contact person, and number of stations by state.

The district court determined that RCI had at least constructive knowledge of Clear Channel's and its predecessors' use of Oklahoma Agrinet since 1978, Tennessee Agrinet since 1982, and Agrinet of the High Plains from 1999 to 2003, as these uses were listed in the trade publications. *See Ray Commc'ns*, 760 F. Supp. 2d at 548. RCI concedes on the basis of the trade publication entries that it had knowledge of Clear Channel's use of its AGRINET mark at the times identified by the district court, but the parties vigorously dispute whether and when each known use gave rise to a colorable trademark infringement claim.

Resolution of this issue is critical to the laches determination as the defense "arises only where the plaintiff has *unrea-*

*sonably* delayed its pursuit of a remedy." *Sara Lee*, 81 F.3d at 462 (citing *Brittingham*, 914 F.2d at 456) (emphasis in the original); *see also id.* at 462 ("[T]o the extent that a plaintiff's prior knowledge may give rise to the defense of estoppel by laches, such knowledge must be of a pre-existing, *infringing* use of a mark.") (emphasis in the original). "Logic dictates that 'unreasonable delay' does not include any period of time before the owner is able to pursue a claim for infringement — otherwise, a trademark owner could be punished for not bringing a claim he had no right to bring." *What-A-Burger*, 357 F.3d at 449 (citing *Sara Lee*, 81 F.3d at 462).

To demonstrate trademark infringement under the Lanham Act, a plaintiff must prove that the defendant's use of a "re-production, counterfeit, copy, or colorable imitation" of that mark "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). In sum, in the laches context, "(1) delay is measured from the time at which the owner knew of an infringing use sufficient to require legal action; and (2) legal action is not required until there is a real likelihood of confusion." *What-A-Burger*, 357 F.3d at 451.[5]

As the movant for summary judgment on laches, Clear Channel was charged with presenting evidence demonstrating that at some identifiable point in time a likelihood of confusion existed and that RCI unreasonably delayed thereafter in taking responsive legal action. The district court concluded

---

[5]Hence, the "conundrum" we described in *Sara Lee*, where we explained that the trademark owner had been "on the horns of a dilemma":

> If [the trademark owner] waits for substantial injury and evidence of actual confusion, it may be faced with a laches defense. If it rushes immediately into litigation, it may have little or no evidence of actual confusion and real commercial damage, may appear at a psychological disadvantage as "shooting from the hip" and may even face a counterclaim for overly aggressive use of litigation.

*Sara Lee*, 81 F.3d at 462 (internal citations omitted).

that, "Plaintiff knew the Defendants were infringing upon the trademark since 1978. Accordingly, it unreasonably delayed in enforcing its trademark rights." *Ray Commc'ns*, 760 F. Supp. 2d at 550. Although the district court recognized the centrality of the likelihood-of-confusion analysis in making these determinations, *see id.* (noting that "in the context of the laches defense, a trademark owner has no obligation to sue until the likelihood of confusion looms large") (internal citations and quotation marks omitted), it erred both in its application of the law and in its assessment of the evidence.

In *Pizzeria Uno Corp. v. Temple*, we identified several non-exclusive factors that we consider in ascertaining the likelihood of confusion between two trademarks, including: (1) the distinctiveness of the senior mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities employed by the parties to transact their business; (5) the similarity of the advertising used by the parties; (6) the defendant's intent in adopting the same or similar mark; and (7) actual confusion. 747 F.2d 1522, 1527 (4th Cir. 1984). Particularly relevant here, we also examine the scope of the parties' geographic markets. *See What-A-Burger*, 357 F.3d at 450 ("An informed analysis of whether the likelihood of confusion exists cannot rest solely upon a 'side-by-side' comparison of the marks without regard to the marketplace in which they are used.") (internal citation omitted). We have noted that "[a]lthough 'a senior federal registrant has superior priority which extends nationwide,' 'there is no likelihood of confusion for a court to enjoin unless and until the senior user shows a likelihood of entry into the junior user's territory.'" *Id.* (citing 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 26:33 (4th ed.)) (hereafter "*McCarthy*").

In this case, RCI asserts that it did not previously have a viable trademark infringement claim because "the geographical separation of the radio broadcasting services by RCI and Clear Channel in the past precluded that cause of action."

Appellant's Br. at 13. The district court disagreed, ruling that a likelihood of confusion — and thus a colorable claim for infringement, triggering the laches period — existed as early as 1978. The district court reasoned that RCI had a "national presence" which "should have signaled to Plaintiff that there was a high likelihood that Plaintiff's market would intersect with Defendants'." *Ray Commc'ns*, 760 F. Supp. 2d at 552. The district court also determined that "there were substantial periods that Plaintiff's market actually did intersect with Defendants'." *Id.* Finally, the district court emphasized Bill Ray's deposition testimony that Clear Channel's use of the AGRINET mark had been "causing confusion since the late 1970s." *Id.* at 552. The district court's analysis is flawed in several respects.

First, we are persuaded that the evidence in the record is insufficient to establish (as a matter of law) that RCI had a national presence such that the AGRINET mark would likely be associated with RCI even in territories in which RCI did not broadcast. *See, e.g.*, *What-A-Burger*, 357 F.3d at 450 n.7 ("There is no evidence — nor can we imagine any — that consumers are currently likely to be confused about whether the burgers served by Virginia What-A-Burger come from Texas or Virginia. By contrast, there might be a great confusion generated by someone who erects a replica of a McDonald's restaurant in some geographically remote area and begins serving similar food."). RCI contends, and the trade publications substantiate, that RCI has traditionally kept its network of affiliated stations in the mid-Atlantic region from Pennsylvania to South Carolina. Although RCI concedes that it has occasionally maintained affiliated stations in the South, Midwest, and even on the West Coast, it asserts that these were generally short term affiliations not lasting more than one to three years. The trade publications, on which both parties and the district court rely, support this assertion.[6]

---

[6]The NAFB Directory and AgriMarketing magazine excerpts in the appellate record indicate that, aside from its long-term presence in the

In addition, even if the evidence were to support the district court's conclusion that RCI had a national presence, this fact alone would be insufficient to establish a likelihood of confusion triggering the laches period. While evidence of geographic separation of the parties' markets may in some instances establish that *no* likelihood of confusion existed, the converse is not necessarily true. Given that "[m]ere use of a mark that is similar or even identical to a registered trademark does not *a fortiori* establish infringement," *id.* at 450, a fact-intensive analysis of the *Pizzeria Uno* factors is essential.

The district court's determination that a likelihood of confusion existed because "there were substantial periods that Plaintiff's market actually did intersect with Defendants," *Ray Commc'ns*, 760 F. Supp. 2d at 552, is similarly flawed. The district court relied for this determination on the trade publications, which showed that RCI had an affiliate in Oklahoma from 1991-1993 and in Texas from 1998-2003, during which times Clear Channel operated under the names Oklahoma Agrinet and Agrinet of the High Plains in Oklahoma and Texas, respectively. Although the district court neglected to address Clear Channel's use of Tennessee Agrinet, we note that there is no evidence in the record that RCI has ever had a presence in Tennessee. RCI asserts that it listed a single Oklahoma station in the NAFB Directory and AgriMarketing magazine from 1991-1993 because of an agreement it had with the USA Radio Network (called a "cross affiliation" or

---

mid-Atlantic region, RCI maintained affiliates in the following states during certain discrete intervals: 1990 (CA, WA); 1991 (AR, CA, IL, IA, MI, OK, TX, WA); 1993 (AL, CA, FL, GA, IL, IN, ME, MA, MI, MS, MT, OK, WA, WY); 1995 (FL, GA); 1996 (FL, GA); 1997 (FL, GA); 1997 (FL, GA); 1998 (IL, NY, OH, TX, WA, WI); 1999 (IL, NY, OH, TX, UT, WI); 2000 (OH, SD, TX, UT, WI); 2001/2002 (IL, NY, OH, TX, UT, WI); 2002/2003 (DE, IL, NY, OH, TX, UT, WI); 2005 (NY, IA); 2006 (IA). Although the trade publications indicate that RCI had short-term affiliates in a number of Midwestern, Western, and Southern states primarily in and around 1991-1993, its presence has been heavily concentrated in the Mid-Atlantic region since the late 1970s.

"cross distribution agreement") which permitted USA Radio Network stations to carry AGRINET programming, but did not require that they do so. RCI further maintains that the USA Radio Network did not sell advertising for RCI.[7] Clear Channel asserts that its broadcasters have never used Agrinet of the High Plains to identify on-air programming and does not address whether its listing of Agrinet of the High Plains in the NAFB Directory and AgriMarketing magazine was likely to cause confusion among advertisers.

The trade publication entries alone, while sufficient to establish that RCI knew of Clear Channel's use of the AGRINET mark, are insufficient to establish as a matter of law that RCI had a viable claim for trademark infringement with respect to Oklahoma Agrinet, Agrinet of the High Plains, or Tennessee Agrinet. The district court failed to consider the *Pizzeria Uno* factors, or to conduct a comparable fact-intensive analysis of likelihood of confusion beyond its over-reliance on limited evidence of the geographic proximity of the parties' markets in Oklahoma and Texas at certain brief intervals (which, as noted *supra*, is irrelevant in any event to Clear Channel's use of Tennessee Agrinet). Instead, the district court emphasized that, "Mr. Ray has himself stated that Defendants' use of Agrinet has been damaging Plaintiff by causing confusion since the late 1970s." *Id.* at 552. In essence, the court found that Bill Ray conceded a necessary element of Clear Channel's affirmative defense. *See id.* at 553 ("Ray concedes that he does not believe the Defendants' use of the mark is more confusing now than in the past.").[8]

---

[7]The only evidence RCI offers in support of these assertions, however, is the deposition testimony of Bill and Lisa Ray, both of whom stated that they could not recall whether the USA Radio Network affiliates carried the RCI AGRINET broadcasts during the time period in question. Neither Bill nor Lisa Ray could recall the years in which this affiliate agreement existed, and Lisa Ray stated that she could not recall anyone who worked for the USA Radio Network during this time period.

[8]The district court observed more than once that RCI had failed to specify how Clear Channel's use of AGRINET is more confusing at present than in the past. Indeed, the court opined that

As noted *supra*, the question whether a trademark owner has knowledge of an infringing use of its mark, thereby triggering the laches period, is an objective determination. In this case, the district court erred in relying solely upon the subjective testimony of a lay witness as establishing that *evidence* of a likelihood of confusion existed at a prior time as a matter of law. If, on remand, the district court applies the *Pizzeria Uno* factors and concludes that a likelihood of confusion arose in the 1990s, when the trade publications indicate that both parties had affiliates using the AGRINET mark in Oklahoma and Texas, then the period of laches is properly measured from that time, not from the late 1970s.[9]

2.

With respect to the second prong of the laches defense, whether the trademark owner unreasonably or inexcusably delayed, we reiterate that delay must be measured from the

---

> Plaintiff would like the court to believe that Plaintiff did not previously have a colorable trademark claim as their business had not expanded into defendants' territory, and thus there was not a likelihood of confusion. Yet, Plaintiff has failed to sufficiently explain how circumstances have now changed to cause the confusion needed for its current trademark suit. (Plaintiff has never even articulated exactly when the Defendants actually infringed.)

*Ray Commc'ns*, 760 F. Supp. 2d at 550 (citation omitted). The district court apparently (albeit implicitly) misapprehends the parties' respective evidentiary burdens. RCI has not moved for summary judgment on its trademark infringement claims, and Clear Channel bears the risk of non-persuasion on its laches defense. RCI's inability to satisfy its burden on the merits of its trademark infringement claims (as to which we express no opinion) is not an appropriate basis for resolution of Clear Channel's motion for summary judgment on its affirmative defense of laches.

[9]Of course, as stated *supra*, this reasoning does not apply to Tennessee Agrinet, given that RCI did not have affiliates in Tennessee in the 1990s or at any other time prior to filing this suit. In addition, Clear Channel's claim that it has never used Agrinet of the High Plains in conjunction with its on-air programming in Texas is relevant to this analysis.

period at which the trademark owner knew or should have known of an infringing use. Having set forth *supra* that the district court should determine on remand when the laches clock began to run in this case, we do not consider whether the record shows as a matter of law, as suggested by RCI, that RCI's delay was reasonable. We do note, however, that RCI's argument that it granted various licenses or otherwise gave permission to Clear Channel's predecessors to use the AGRI-NET mark is relevant to the reasonableness of its delay. Thus, the district court may in its discretion consider the effect of any evidence of such licenses or permission on the reasonableness of RCI's delay, bearing in mind that credibility determinations are not fodder for summary judgment proceedings. *See Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991) ("It is not our job to weigh the evidence . . . or to disregard stories that seem hard to believe. Those tasks are for the jury.") (citation omitted).

3.

With respect to the third prong of the laches defense, whether the trademark owner's delay has resulted in undue prejudice to the defendant, the district court determined that Clear Channel has suffered both economic and evidentiary prejudice. Upon our de novo review, however, we are not persuaded that such elements are established on this record as a matter of law.

A defendant suffers economic prejudice when it relies on the trademark owner's inaction by developing a valuable business around the trademark. *See* 6 *McCarthy* § 31:12 ("Laches is a good defense if plaintiff's long failure to exercise its legal rights has caused defendant to rely to its detriment by building up a valuable business around its trademark."); *Bridgestone/Firestone Research, Inc. v. Auto. Club De L'Quest De La France*, 245 F.3d 1359, 1363 (Fed. Cir. 2001) ("Economic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic

promotion of a mark over a prolonged period adds weight to the evidence of prejudice."). Evidentiary prejudice encompasses such things as lost, stale or degraded evidence or witnesses whose memories have faded or who have died. 6 *McCarthy* § 31:12 (citing *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002), *cert. denied*, 538 U.S. 907 (2003).

With respect to economic prejudice, Clear Channel asserts that its long-term use of the AGRINET marks demonstrates that it has built up a valuable business in reliance upon RCI's inaction. *See* Appellee's Br. at 31 (stating that "[t]he Oklahoma and Tennessee Agrinet operations under those names since the 1970s — with multiple affiliate radio stations in those and adjoining states — constitute a valuable and established business enterprise"). The district court agreed, reasoning that

> Defendants have been using the Agrinet marks for a prolonged period; Defendants starting [sic] using Tennessee Agrinet, Oklahoma Agrinet, and Kentucky Agrinet over 30 years ago, and the newer marks in the late 1990's. Accordingly, Defendants have built up a valuable business around the trademark.

*Ray Commc'ns*, 760 F. Supp. 2d at 554.

The difficulty with the court's analysis is that mere delay not resulting in injury to an infringing defendant is insufficient to foreclose an award of relief for infringement. *See, e.g.*, *Costello v. United States*, 365 U.S. 265, 282 (1961) (laches requires proof of prejudice to the party asserting the defense); *see also Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 615 (7th Cir. 1965) (opining that if "prejudice could consist merely of expenditures in promoting the infringed name, then relief would have to be denied in practically every case of delay"); *Internet Specialties West, Inc. v.*

*Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 992-93 (9th Cir. 2009) (same). Clear Channel's assertion that it would suffer economic injury if enjoined from using AGRINET, without reference to any evidence beyond the length of time it has used the mark, is simply insufficient to establish economic prejudice.

Furthermore, although we are persuaded that Clear Channel has failed to meet its burden as to economic prejudice in the first instance, we note the salience of RCI's argument that Clear Channel's voluntary cessation of its use of both Kentucky Agrinet and Tennessee Agrinet undermines its claim of economic prejudice. *See Schafer Co. v. Innco Mgmt. Corp.*, 797 F. Supp. 477 (E.D.N.C. 1992) (finding that defendant failed to prove prejudice for purposes of laches defense where defendant voluntarily changed terminology on infringing sign), *aff'd*, 995 F.2d 1064 (4th Cir. 1993) (unpublished). RCI points out, and the district court recognized, that two of Clear Channel's employees testified that these changes did not affect the company's revenue.

Specifically, Clear Channel permanently ceased its use of Kentucky Agrinet in 1993 at the request of Bill Ray, instead using Kentucky AgNet, and Clear Channel broadcaster Jack Crowner testified that this change did not affect revenue. In addition, Clear Channel ceased its use of Tennessee Agrinet for one year, instead using Tennessee Ag Network and Tennessee AgNet, and Clear Channel employee Bill Storey testified that this change also did not affect revenue. The district court reasoned that the evidence that Clear Channel stopped using Tennessee Agrinet for one year was not appropriate for consideration on summary judgment because "this cessation was for settlement purposes, statements regarding its effect would not be admissible in court." *Ray Commc'ns*, 760 F. Supp. 2d at 554 (citing Fed. R. Evid. 408; *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654-55 (4th Cir. 1998)). This reasoning is untenable.

As relevant here, Rule 408 provides that evidence of conduct or a statement made during compromise negotiations about the claim "is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408. While the *reason* Clear Channel ceased using the name Tennessee Agrinet for one year (as a part of settlement efforts) may be inadmissible under Rule 408, the *fact* that it did so is not. This information is public and otherwise discoverable and accordingly is not covered by Rule 408. On remand, the district court should consider both the fact of voluntary name changes and the highly-relevant testimony regarding the fiscal effects of the same in conjunction with Clear Channel's claim that it would suffer economic prejudice if enjoined from using RCI's federally-registered AGRINET mark.

With respect to evidentiary prejudice, Clear Channel argues that "the defense of this lawsuit has been seriously prejudiced by the absence of pertinent documentation" and, in any event, "determining whether loss of evidence resulted in prejudice to Clear Channel is a matter left to the district court's discretion." Appellee's Br. at 29 (citing *Pro Football, Inc.*, 565 F.3d at 883). The only controverted issue that Clear Channel identifies to which a lack of testimonial or documentary evidence might be pertinent, however, is RCI's argument that it granted various licenses permitting Clear Channel to use the AGRINET mark.

Manifestly, however, the lack of evidence supporting the existence of these alleged licenses prejudices RCI, not Clear Channel. Thus, we are persuaded that while there do appear to be deficiencies in the available evidence due to, *inter alia*, the passage of time, a computer crash at RCI, and routine purging of files by RCI, Clear Channel failed to articulate how this would prejudice Clear Channel's defense specifically. Similarly, the district court erred in failing to indicate how the lack of available evidence *attributable to RCI* is rele-

vant to one or more material issues in dispute and would undermine Clear Channel's ability to prove its laches defense. *See Vineberg v. Bissonnette*, 548 F.3d 50, 58 (1st Cir. 2008) ("Where courts have allowed a laches defense to be premised on an evidence-based predicate, they have done so because that evidence would have been relevant to one or more essential issues in dispute between the parties."). In sum, as our sister circuit has aptly stated, "because the burden of proving laches rests with the proponent of that defense, the defendant had an obligation to adduce specific evidence of prejudice in order to thwart the plaintiffs' motion for summary judgment. The defendant failed to carry this burden; the record before the district court contained no legally cognizable evidence of prejudice. That is the end of the line." *Id.* (internal citation omitted).

## C.

Finally, we consider whether the district court erred in entering final judgment in favor of Clear Channel and dismissing RCI's claims without addressing whether laches bars all forms of relief sought. RCI argues that the district court erred in failing to consider whether granting summary judgment to Clear Channel on the affirmative defense of laches necessarily barred both damages and injunctive relief. Clear Channel argues that RCI failed to preserve this argument for appeal or, in the alternative, that "there is no absolute rule that laches may not bar all relief where a plaintiff has unreasonably slept on his rights to the detriment of the defendant." Appellee's Br. at 33.

The parties concede, and we agree, that laches *may* act as a bar to both monetary and injunctive relief under certain circumstances, but that this result is not automatic. *See Sara Lee*, 81 F.3d at 461 ("[T]he doctrine is sparingly applied where, as here, a plaintiff seeks only equitable relief"); *Skippy, Inc. v. CPC Int'l, Inc.*, 674 F.2d 209, 212 (4th Cir. 1982) ("While the availability of laches as a defense to injunctive relief may be

limited . . . laches will bar a claim for damages or bad faith infringement."). As we stated in *Sara Lee*, "in consideration of the public interest, estoppel by laches may not be invoked to deny injunctive relief if it is apparent that the infringing use is likely to cause confusion." 81 F.3d at 461 (citing 4 *McCarthy* § 31.04[1]); *see also Univ. of Pittsburgh v. Champion Prods., Inc.*, 686 F.2d 1040, 1044 (3d Cir.) ("Because laches is an equitable doctrine, its application is inextricably bound up with the nature and quality of the plaintiff's claim on the merits relative to a prospective injunction."), *cert. denied*, 459 U.S. 1087 (1982).

We further noted that "[c]ases involving the denial of injunctive relief usually present one or more aggravating factors, causing the balance of the equities (which has, at that point, favored the defendant by virtue of the delay-and-prejudice analysis) to shift even further to the defendant's advantage." *Sara Lee*, 81 F.3d at 461 n.8 (citing 4 *McCarthy* § 31.03[3][b] (reviewing cases)). These factors include: "(1) delay during which the mark passed into use as a generic name, (2) a grossly long period of delay, (3) dubious proof of likelihood of confusion, (4) doubt as to the plaintiff's title to the mark, (5) prior business dealings between the parties that result in the plaintiff impliedly consenting to the defendant's infringement, and (6) the defendant's good-faith development of a specific territorial area." *Id.*

The district court did not discuss the effect of laches on the availability of injunctive relief in this case, nor did it mention the presence of aggravating factors. As RCI points out, the district court "apparently assumed without analysis that a showing of laches barred all relief and the entire cause of action." Appellant's Br. at 14. Clear Channel essentially urges us to accept on faith that the district court implicitly found such "plus factors" present here. We decline to do so. If on remand the district court once again finds Clear Channel entitled to summary judgment on its affirmative defense of

laches, it must explicitly address the availability, or lack thereof, of prospective injunctive relief.

## III.

For the foregoing reasons, we vacate the judgment and remand this action to the district court for further proceedings consistent with this opinion. On remand, if the district court deems further summary judgment proceedings on laches appropriate, the district court should conduct a fact-intensive inquiry into the adequacy of Clear Channel's showing, and of the evidence of record as a whole, to determine whether and when RCI had knowledge of a viable claim for infringement, thereby triggering the laches period. In addition, the court must consider what specific evidence, if any, Clear Channel has presented that it has been prejudiced by RCI's delay in filing the instant trademark infringement action. If the court again finds that summary judgment is appropriate on the basis that Clear Channel has provided sufficient evidence to obtain a directed verdict if not controverted at trial and that no genuine disputes of material fact exist, it must nevertheless explicitly address whether laches bars RCI's claim for injunctive relief. If the district court concludes that Clear Channel is not entitled to summary judgment on laches, the court is free to consider whether the affirmative defenses of acquiescence or abandonment have been established, or otherwise, it is free to proceed as it sees fit to bring this action to conclusion.

*VACATED AND REMANDED*