**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2390

JAY NEIL; ERIKA K. NEIL,

                Plaintiffs – Appellants,

    v.

WELLS FARGO BANK, N.A., d/b/a Wells Fargo Home Mortgage; BWW LAW
GROUP, LLC; EQUITY TRUSTEES, LLC; BANC OF AMERICA FUNDING CORP.,
2005-4 TRUST,

                Defendants – Appellees.

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria.   Claude M. Hilton, Senior
District Judge. (1:13-cv-00644-CMH-JFA)

Argued:  October 28, 2014        Decided:  December 30, 2014

Before MOTZ, SHEDD, and WYNN, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

**ARGUED**: Jessica Michelle Carter, Christopher Edwin Brown, TUCKER
& ASSOCIATES, PLLC, Vienna, Virginia, for Appellants.   Amy
Sanborn Owen, BRIGLIAHUNDLEY, PC, Fairfax, Virginia, for
Appellees.   **ON BRIEF**: Todd Lewis, THE LEWIS LAW GROUP, P.C.,
Arlington, Virginia, for Appellants.  John D.V. Ferman, Nicholas
V. Cumings, BRIGLIAHUNDLEY, PC, Fairfax, Virginia, for Appellees
BWW Law Group, LLC and Wells Fargo Bank, N.A., d/b/a Wells Fargo
Home Mortgage.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jay and Erika K. Neil (the "Neils") appeal the district court order dismissing their breach of contract and related claims against Wells Fargo Home Mortgage ("Wells Fargo"). For the following reasons, we vacate the dismissal order of the claims and remand for further proceedings consistent with this opinion.[1]

## I.

In 2005, the Neils borrowed $604,000, evidenced by a promissory note and deed of trust, to purchase property located in Centreville, Virginia. Wells Fargo was the original lender and the servicer of the note. In April 2009, the Neils applied to Wells Fargo for a loan modification and provided documentation regarding their financial status which indicated that they were unable, or would soon be unable, to pay their monthly loan payment. This application was denied by Wells Fargo in June 2009.

In October 2009, Wells Fargo, using the financial

---

[1] The district court dismissed all ten counts of the Amended Complaint. However, the Neils appeal only the dismissal of four claims: breach of contract (Count 1), slander of title (Count 2), abuse of process (Count 3), and remove cloud on title (Count 4). The district court dismissed Counts 2, 3, and 4 on the basis that there was no enforceable contract between the Neils and Wells Fargo. Wells Fargo raises alternate grounds for affirmance of the dismissal of these claims; however, we leave that for the district court to address in the first instance.

2

information submitted by the Neils in that loan modification application, mailed the Neils several documents, including a document labeled "Home Affordable Modification Program Loan Trial Period (Step One of Two-Step Documentation Process") (the "TPP"). This paperwork relates to a federal program designed to assist homeowners at risk of foreclosure called the Home Affordable Modification Program ("HAMP"). The TPP offered the Neils a short-term, three month reduced monthly payment plan under their existing promissory note, apparently to help keep the Neils afloat so they could pursue a modification of their loan through this federal program. The reduced payment was based on the estimated amount that would be due under their note if the Neils ultimately qualified for HAMP.

In response, the Neils signed the TPP and submitted the first reduced monthly payment to Wells Fargo. In September 2010, Wells Fargo informed the Neils that they did not qualify for a permanent modification under HAMP because the net present value ("NPV") calculation of their proposed loan modification was not sufficient.[2] (J.A. 88–89). Following the denial of a HAMP modification, the Neils defaulted on their loan, and their

---

[2] Under HAMP, a loan servicer must calculate the NPV of the proposed modification in order to determine whether a mortgagor qualifies for a modification through HAMP. The NPV calculation involves evaluating the NPV of a borrower's existing loan with the NPV of a hypothetical HAMP-modified loan to determine whether it would be more profitable to modify the loan or to proceed to foreclosure.

3

property was sold at a foreclosure sale in March 2013.

In May 2013, the Neils filed suit seeking to overturn the foreclosure sale, arguing, among other things, that the TPP is an enforceable contract that obligated Wells Fargo to permanently modify the terms of the Neils' loan. On motion of Wells Fargo, the district court dismissed the case for failure to state a claim after the court determined that the TPP was not a contract because there was no valid consideration.[3]

## II.

We review de novo the district court's grant of the Wells Fargo motion to dismiss. Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 776 (4th Cir. 2013). In conducting this review, we accept as true the facts alleged in the Neils' complaint and construe those facts in the light most favorable to the Neils. Id. Ultimately, a complaint should not be dismissed under Rule 12(b)(6) "unless it appears certain that the plaintiff can prove

---

[3] The district court held in the alternative that the Neils did not state a claim for breach of contract because there is no legal right to a loan modification under HAMP. (J.A. 164). However, at oral argument the Neils stated that that they do not seek to be placed in the HAMP program; rather they concede (as the district court found) that there is no private right of action for an individual seeking a loan modification under HAMP or the Emergency Economic Stabilization Act of 2008 (EESA), under which the HAMP program was crafted. Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 775 (4th Cir. 2013) (noting that "Congress created no private right of action for the denial of a HAMP application"). Here, the Neils instead assert that the TPP was a contract that required Wells Fargo to permanently modify the loan, even if the modification is not provided through HAMP.

no set of facts which would support its claim and would entitle it to relief." Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

We conclude that the district court erred in dismissing the Neils' breach of contract claim because the TPP was not supported by consideration. The parties agree that Virginia law applies, and under Virginia law, a party must establish three elements to prove the existence of a valid contract: an offer, acceptance, and consideration. Chang v. First Colonial Sav. Bank, 410 S.E.2d 928 (Va. 1991). Here, there was an offer, it was accepted, and the contract was supported by sufficient consideration.

First, the TPP was an offer from Wells Fargo to the Neils. The language of the letter and the TPP itself plainly state that the TPP constitutes an offer from Wells Fargo for a temporary modification of the Neils' loan. See, e.g., J.A. at 77 ("LET US KNOW THAT YOU ACCEPT THIS OFFER") (emphasis added); J.A. at 78 ("To accept this offer") (emphasis added); J.A. at 81 ("to determine whether I qualify for the offer described in this Plan") (emphasis added). Given this express language, we easily conclude that the TPP constituted a valid offer; an offer for a modification of the loan from Wells Fargo to the Neils because it changed (at least for a period of time) the amount the Neils would be obligated to pay under the mortgage. See Chang, 410

5

S.E.2d at 930; <u>Humble Oil & Ref. Co. v. Cox</u>, 148 S.E.2d 756, 759 (Va. 1966).

Next, the Neils accepted the Wells Fargo offer by signing the TPP documents and mailing them back to Wells Fargo.[4] Wells Fargo's performance under the terms of the TPP constituted its acknowledgment that the Neils had accepted the offer. <u>See</u> <u>Galloway Corp. v. S.B. Ballard Constr. Co.</u>, 464 S.E.2d 349, 356 (Va. 1995); <u>Sfreddo v. Sfreddo</u>, 720 S.E.2d 145, 152–53 (Va. App. 2012).

Finally, the contract was supported by consideration. Under Virginia law, consideration represents "the price bargained for and paid for a promise." <u>Smith v. Mountjoy</u>, 694 S.E.2d 598, 602 (Va. 2010) (quoting <u>Dulany Foods, Inc. v. Ayers</u>, 260 S.E.2d 196, 202 (Va. 1979)). Consideration may be "a benefit to the party promising or a detriment to the party to whom the promise is made." <u>GSHH-Richmond, Inc. v. Imperial Assocs.</u>, 480 S.E.2d 482, 484 (Va. 1997) (quoting <u>Sager v. Basham</u>, 401 S.E.2d 676, 677 (Va. 1991)). Proof of consideration is not a high hurdle; rather, "[a] very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient

---

[4] Wells Fargo did not countersign the agreement as required by the TPP document, but, here, countersigning is merely a formality, which is not necessary under Virginia contract law. <u>See</u> <u>Galloway Corp. v. S.B. Ballard Constr. Co.</u>, 464 S.E.2d 349, 356 (Va. 1995) ("The absence of an authorized signature does not defeat the existence of [a] contract.").

to support the promise." Brewer v. First Nat. Bank of Danville, 120 S.E.2d 273, 279 (Va. 1961).

In this case, the TPP imposed new obligations on the Neils. First, it required the Neils to commit to credit counseling: "If the lender requires me to obtain credit counseling, I will do so." (J.A. 81 ¶ F). Further, the acknowledgment from Wells Fargo confirming receipt of the Neils' signed acceptance of Wells Fargo's offer indicates and reaffirms that when the Neils "signed [the] Trial Period Plan, [they] agreed to work with a HUD-approved housing counseling agency." (J.A. 86). Also, the Neils provided a Hardship Affidavit indicating they were in default or would soon be in default, as well as certified to Wells Fargo that the previously submitted financial information remained current, true, and accurate. (J.A. 81). Moreover, the Neils agreed that while the TPP was in effect, Wells Fargo would report their loan as delinquent to the credit reporting agencies, even if the reduced monthly payments were timely made under the TPP, as Wells Fargo had agreed to accept. (J.A. 79). The Neils additionally agreed to a waiver of foreclosure notices (J.A. 82; ¶ B), as well as consented to the disclosure of their personal information and the terms of the TPP to a number of entities (J.A. 83; ¶ F). It is clear that the TPP obligated the Neils to more than the "trifling inconvenience" needed to create an enforceable contract.

7

In sum, Wells Fargo made an offer, the Neils accepted that offer, and there was sufficient consideration to create a modification of the contract.[5] We therefore vacate the dismissal of the Neils' claims and remand for further proceedings consistent with this opinion.

<u>VACATED AND REMANDED</u>

---

[5] We express no opinion as to whether the TPP was breached by Wells Fargo or whether this modification by the TPP led to a long-term, permanent modification of the loan. We leave for the district court the issue of what the parties' respective obligations were under the TPP.

8